UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In re:

                                           Chapter 7

MI YOUNG KAL,

                                           Case No. 21-42041-jmm

                          Debtor.
-----------------------------------------------------------------X
BLANCA SAGBACIELA,
MARIA CONCEPCION BERMEJO SANANGO,
and TROY LAW, PLLC,

                                 Plaintiffs,

              v.                           Adv. Pro. No. 21-01185-jmm

MI YOUNG KAL
aka MI KAL,

                                 Defendant.
-----------------------------------------------------------------X

## MEMORANDUM DECISION ON OBJECTIONS TO DISCHARGE AND DISCHARGEABILITY OF DEBTS

*Appearances*:

John Troy, Esq.                           Dennis J. O'Sullivan, Esq.
Aaron B. Schweitzer, Esq.           210-13-35th Avenue
Troy Law, PLLC                     Bayside, NY 11361
41-25 Kissena Boulevard, Suite 110
Flushing, NY 11355

*Counsel for Plaintiffs*                *Counsel for Defendant*
*Blanca Sagbaciela,*                 *Mi Young Kal*
*Maria Concepcion Bermejo Sanango,*
*and Troy Law, PLLC*

## **INTRODUCTION**

Plaintiffs Blanca Sagbaciela ("Sagbaciela") and Maria Concepcion Bermejo Sanango ("Bermejo" and together with Sagbaciela, the "Plaintiffs") were employed as manicurists by Ruby Nails Tarrytown, Inc. ("Ruby Nails").  Defendant Mi Young Kal ("Kal") owned and managed Ruby Nails.

Pre-bankruptcy, Sagbaciela commenced an action in New York State Supreme Court against Kal, her spouse, and Ruby Nails seeking a money judgment for violations of the federal Fair Labor Standards Act (the "FSLA") and New York Labor Law.  Sagbaciela alleged, among other things, that she was not paid minimum wage, overtime, or "spread of hours" pay.  Similarly, pre-bankruptcy, Bermejo also commenced an action against Kal, her spouse, and Ruby Nails in the United States District Court for the Southern District of New York seeking a money judgment for violations of the FLSA and New York's labor laws.  Like Sagbaciela, Bermejo alleged she was not paid the minimum hourly wage, overtime, or "spread of hours" pay.

After Kal commenced this bankruptcy case, Plaintiffs obtained relief from the automatic stay to prosecute their respective lawsuits.  Additionally, the Plaintiffs commenced this adversary proceeding, which seeks a judgment that Plaintiffs' claims are nondischargeable under (1) section 523(a)(2)(A), title 11, United States Code (the "Bankruptcy Code") because the claims arise from false pretenses, a false representation, or actual fraud; and (2) Bankruptcy Code section 523(a)(6) because the claims are for willful and malicious injuries caused by Kal.  Lastly, Plaintiffs seek a judgment denying Kal a discharge under Bankruptcy Code section 727(a)(4)(A) based on alleged false statements in Kal's bankruptcy Schedules.

Sagbaciela has proven that Kal's failure to pay lawful wages was willful and malicious. Therefore, the Court holds that Sagbaciela's claims are nondischargeable under Bankruptcy Code

1

section 523(a)(6).  Sagbaciela, however, has failed to prove her claims resulted from false pretenses, a false misrepresentation, or actual fraud.  Further, Sagbaciela failed to prove that erroneous statements and omissions in Kal's bankruptcy Schedules were intentional or material.  Therefore, Sagbaciela's causes of action under Bankruptcy Code sections 523(a)(4) and 727(a)(4)(A) are dismissed.

Bermejo's causes of action are dismissed and her claims against Kal are disallowed in full and expunged.  The United States District Court entered an Order dismissing Bermejo's claims against Kal, with prejudice (the "Order and Opinion"), pursuant to Rule 41(b) of the Federal Rules of Civil Procedure because Bermejo's attorney ignored the District Court's order to show cause directing counsel to move for default judgment.  As there is a final judgment and order dismissing Bermejo's causes of action with prejudice, Bermejo no longer has any claims against Kal that could be deemed nondischargeable and Bermejo lacks standing to object to Kal's discharge.

## JURISDICTION

The Court has jurisdiction over Sagbaciela's claims against Kal pursuant to 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a), and the Standing Order of Reference entered by the United States District Court for the Eastern District of New York dated August 28, 1986, as amended by the Order dated December 5, 2012.  The Court may hear and determine this adversary proceeding because the claims are core claims pursuant to 28 U.S.C. § 157(b)(2)(I) and (J).  This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

As there is no longer a case or controversy between Bermejo and Kal, this Court lacks subject matter jurisdiction over Bermejo's claims against Kal.

**PROCEDURAL HISTORY**

On November 15, 2021, Plaintiffs and Troy Law, PLLC ("Troy Law") filed a complaint commencing this adversary proceeding asserting three causes of action.  Compl., Adv. ECF No. 1.[1]  Troy Law represents Plaintiffs in the Sagbaciela State Court Action, the Bermejo Federal Action, each as defined below, and this adversary proceeding.  Troy Law included itself as a plaintiff in this adversary proceeding asserting Kal would be obligated to pay Troy Law for Plaintiffs' legal fees if Plaintiffs prevailed on their FLSA and New York Labor Law claims.  The First Cause of Action asserts the Plaintiffs' claims are nondischargeable pursuant to Bankruptcy Code section 523(a)(2)(A), the Second Cause of Action asserts Plaintiffs' claims are nondischargeable pursuant to Bankruptcy Code section 523(a)(6), and the Third Cause of Action claims Kal should be denied a discharge pursuant to Bankruptcy Code section 727(a)(4)(A). Plaintiffs also seek an award of attorneys' fees.

The Court conducted a trial on March 18, 2024 and March 19, 2024.  The Court heard testimony from Sagbaciela, Bermejo, Kal, and Kal's daughter, Angel Shin ("Shin").  Tr. March 18, 2024 ("Tr. 1"), Adv. ECF No. 14; Tr. March 19, 2024 ("Tr. 2"), Adv. ECF No. 15.

On May 24, 2024, Plaintiffs filed their proposed findings of fact and conclusions of law and a post-trial brief.  Proposed Findings of Fact and Conclusions of Law ("Pl. B."), Adv. ECF No. 19; Reply in Supp., Adv. ECF No. 20.  Defendant did not provide the Court with any post-trial submissions.

---

[1] Citations to "ECF No. []" are to documents filed in Case No. 21-42041-jmm, identified by docket entry number. Citations to "Adv. ECF No. []" are to documents filed in Adv. Pro. 21-01185-jmm, identified by docket entry number.

## **BACKGROUND**

A.      **The Bankruptcy Case**

On August 7, 2021 (the "Petition Date"), Kal filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.  Pet., ECF No. 1.

Kal filed her bankruptcy Schedules and Statement of Financial Affairs ("SOFA") on August 7, 2021 and Amended Schedules on September 1, 2021.  Pet. 10-29 ("Schedules"), ECF No. 1; Pet. 30-36, ECF No. 1; Am. Schedules, ECF No. 16.  The Schedules and SOFA are signed by Kal under penalty of perjury.  Schedules 29, ECF No. 1; Am. Schedules 4, ECF No. 16.

Kal's Schedules represent that, as of the Petition Date:

- She owned real property in Bayside New York with a fair market value of $290,000.  She owned the property as a joint tenant and the value of her interest in the property was $145,000.

- She owned a 2014 Chrysler Minivan with a $6,500 fair market value.

- She had a claim against a third party with an unknown value that she described as "Kal, Mi Young vs. Keane, Caroline A. (Personal Injury Case) Case No: 701136/2021."

Schedules 10-11, 14, ECF No. 1.

Kal's Schedules include Sagbaciela as a creditor with a $50,000 disputed claim.  Schedules 19, ECF No. 1.  Bermejo is identified as a creditor with a disputed claim of $50,000, albeit, Bermejo is listed as Troy Law, PLLC, Re Maria Sanango.  Schedules 20, ECF No. 1.  Kal's Schedules also refer to three creditors named Vicky, Jessica, and Rosa Maria Montero.  Schedules 19-20, ECF No. 1.  Each of these three creditors is listed as having a disputed claim in the amount of $0.00 for "[w]ages, salaries and commissions [u]npaid wages, overtime, etc."  Schedules 19-20, ECF No. 1.

Respecting income, Kal represented in her Schedules that as of the Petition Date her monthly income was $2,650 from unemployment insurance and her spouse's monthly income was $2,600 from wages.  Schedules 26, ECF No. 1.

The SOFA represents that for calendar year 2020, she had $20,000 of income from wages, commissions, bonuses and tips plus $18,000.00 in unemployment, and in calendar year 2019, she had $30,000 in income from wages, commissions, bonuses and tips.  Schedules 30-31, ECF No. 1.

On August 1, 2021, Sagbaciela filed a proof of claim asserting a $152,260.89 general unsecured claim and Bermejo filed a proof of claim asserting a $159,798.99 general unsecured claim.  Proof of Claims 1-1, 2-1.

On January 20, 2022, The Court entered an order granting relief from the automatic stay to permit the Plaintiffs to proceed to judgment with their lawsuits against Kal.  Order Granting Mot. for Relief from Stay, ECF No. 34.

**B.**     **Sagbaciela's Employment with Ruby Nails**

Kal is the sole owner of Ruby Nails and managed its day-to-day operations.  Her duties included hiring employees, fixing work hours and setting compensation rates.  Tr. 2 6:17-7:3, 9:5-7.

> i.     Sagbaciela's Days and Hours Worked

Sagbaciela worked for Ruby Nails as a manicurist and pedicurist from August 2007 through March 2020 and from June 2020 through October 2020.  Tr. 1 9:9–10:13.  Sagbaciela worked five days per week from April through September and four days per week from January through March and October through December.  *See* Tr. 1 19:11–18.

Ruby Nails operated from 9:30 a.m. to 7:30 p.m.  Tr. 1 85:16-17, 22-25; Tr. 2 13:3-4. Sagbaciela alleged her shift often exceeded ten hours per day because she was required to clean the nail salon for ten or fifteen minutes before Ruby Nails opened and she would not finish serving customers until about 7:30 p.m. or 8:00 p.m.  Tr. 1 17:11–18:2, 18:18–22, 49:13–50:5. Shin testified that although employees washed towels and prepared for the day upon arrival, the employees started the workday at 9:30, not earlier.  Tr. 1 105:13-22.  Shin conceded there were instances when Sagbaciela and other employees were required to stay past 7:30 p.m.  Tr. 1 105:25-106:7.

Sagbaciela testified she received no regular breaks during her workday and could eat only when the salon was slow.  Tr. 1 31:13-15, 35:8-17, 36:7-15; 72:19–73:7.  Kal testified her employees "could have lunch whenever they [were] less busy, whenever there [was] no customer."  Tr. 2 56:14-16.  Shin testified there were times when no clients would come into the salon and employees would sit idly for hours.  Tr. 1 85:22-25.

   ii.  <u>Sagbaciela's Compensation</u>

Sagbaciela did not use a punch clock to record the hours she worked.  She claims she was not permitted to use the punch clock because it would accurately reflect the hours she worked. Tr. 1 19:3–10, 51:11–22.  Kal testified, however, that the punch clock broke prior to the pandemic and was never fixed.  Tr. 2 8:6-25.

Sagbaciela was initially compensated at a rate of $65.00 per day.  Tr. 1 11:13–15, 84:7-11; Tr. 2 9:8–11.  Sagbaciela received raises; earning $70.00 per day in 2008, $80.00 per day in 2012, and $95.00 per day in 2018.  Tr. 1 12:6–13:10.  From August 2007 through March 2020, it appears that Sagbaciela was not paid time-and-a-half for overtime hours and was not paid an additional hour's pay at the minimum wage for days when her spread of hours exceeded ten

hours.  Tr. 1 104:19–21, 106:18–107:2.  Kal paid Sagbaciela's base salary weekly.  Tr. 1 16:15-18.

From August 2007 through March 2020, Sagbaciela was paid per-service commissions in addition to her base salary.  Tr. 1 15:19–16:3.  The commissions ranged from $1.00 per pedicure to $3.00 per massage.  Tr. 1 15:19-16:3.  Sagbaciela calculates the aggregate commissions ranged from $30.00 to $40.00 per day.  Tr. 1 38:16–18.  Kal would pay Sagbaciela's commissions each day.  Tr. 1 16:10-12.  Kal purportedly credited customer tips against Sagbaciela's commissions.  Tr. 1 16:22–17:6.  However, Sagbaciela collected her tips from her clients and did not report the dollar amount of tips she received to Kal.  Tr. 1 16:19-21, 17:7-9.

In June and July 2017, Kal had Sagbaciela sign documents titled "Salary/Time Agreement of Employment."  Each page of the agreement is a chart.  Pl. B., Adv. ECF No. 19-4.  The column headings on the chart are: MM/DD/YY; Begin time; End time; Total Hours; Lunch; OT Hours; Basic Wages; OT Wages; Commissions; Tip; Net Payment; and, Signature.  *Id*.  The words "ON TIME CARD" are handwritten under the Begin time and End time columns.  Neither party produced the "time card" referenced in the agreement.  The agreements report that Sagbaciela worked ten hours each day and had a 30-minute lunch breach each day.  *Id*.  The agreements report that Sagbaciela received an hourly rate of $7.95 and an overtime rate of $13.20.  *Id*.  Sagbaciela claims the agreements are false because she was being paid a daily rate not an hourly rate, she often worked more than ten hours per day, and never had a 30-minute lunch break.  Tr. 1 17:11–18:2, 18:18–22, 31:13-19, 35:8-17, 36:7-15.  Further, Sagbaciela argues the tips and commissions referenced in the documents are arbitrary and potentially inaccurate because Kal kept no records of tips or commissions and Sagbaciela would sign the Salary/Time Agreements once a month.  Pl.

B. 9-10, Adv. ECF No. 19; Tr. 1 31:23-24.  Sagbaciela testified she signed the documents without protest because she believed she would be fired if she refused.  Tr. 1 32:3–8.

Kal testified that between the salaries, tips, and commissions, she believed her employees were receiving fair compensation.  Tr. 2 58:23-59:11.  She testified that the daily rate plus commissions was greater than what employees would have received if paid per hour, so employees preferred the daily rate.  Tr. 2 19:16-25; Tr. 1 104:21-105:1.

When Sagbaciela returned to work after the Pandemic in June of 2020, Kal changed Sagbaciela's compensation from a daily rate to an hourly rate.  Tr. 1 13:11–18, 19:19-23.  Also, Kal stopped paying commissions.  Tr. 1 19:19-23.  Sagbaciela claims she was paid $11.00 per hour, which was less than the $13.00 New York minimum wage applicable to Ruby Nails in 2020.  Tr. 1 20:10–13; *see* 12 N.Y.C.R.R. §142-2.1(a)(2).  Kal claims Sagbaciela's hourly rate was $13.00 per hour but she was paid $11.00 per hour due to the tip credit.  Kal did not give Sagbaciela notice of Ruby Nails' intention to deduct a tip credit.  *See* Tr. 1 12:3–5, 20:14–16. Sagbaciela objected to the change in compensation from the daily rate to the hourly rate.  Tr. 1 19:24-20:9.  Sagbaciela left Ruby Nails when it closed in October 2020.  Tr. 1 10:7-13.

## C.    <u>Pre-Petition Litigation</u>

### i.   <u>Sagbaciela's State Court Action</u>

On March 31, 2021, Sagbaciela filed an action against Kal, Ruby Nails, and Edwin Keh (Kal's spouse) in the Supreme Court of the State of New York, County of Westchester.  *Sagbaciela v. Ruby Nails Tarrytown, Inc.* (the "Sagbaciela State Court Action"), Case No. 53960/2021 (N.Y. Sup. Ct. 2021), N.Y.S.C.E.F. 1-2.  The Complaint asserted claims based on violations of the FLSA and New York Labor Law.  *Id.*  The Court takes judicial notice that on May 31, 2023, the court in the Sagbaciela State Court Action entered a Corrected Judgment that granted a $141,041.70 default

judgment in favor of Sagbaciela and against Kal and Ruby Nails, jointly and severally.  Corrected J., Sagbaciela State Court Action, N.Y.S.C.E.F. 45.  The judgment amount is inclusive of $118,058.30 in compensatory damages and prejudgment interest, $22,416.00 in attorneys' fees, and $567.40 in costs.  *Id*.

      ii.  <u>Bermejo's Federal District Court Action</u>

On October 4, 2020, Bermejo filed a lawsuit against Kal and Ruby Nails, for alleged violations of the FLSA and New York State labor law, in the United States District Court, Southern District of New York.  *See Sanango v. Ruby Nails* (the "Bermejo Federal Action"), No. 7:20-cv-08245, 2023 WL 2707329 (Bankr. S.D.N.Y. Oct. 4, 2020).  The Court takes judicial notice that on March 30, 2023, United States District Judge Philip M. Halpern entered the Opinion and Order that, among other things, granted a default judgment in favor of Bermejo and against Ruby Nails. Bermejo Federal Action, 2023 WL 2707329, at *1.

The Opinion and Order, however, noted that Bermejo failed to move for default judgment against Kal, notwithstanding that the District Court Judge directed Bermejo to file (a) a proposed Order to Show Cause why a default judgment should not be entered against Kal or, (b) a voluntary dismissal as to Kal.  *Id*. at *6.  Due to Bermejo's failure to comply with the District Court Judge's Order to Show Cause, the District Court Judge dismissed Bermejo's claims against Kal, with prejudice, under Rule 41(b) of the Federal Rules of Civil Procedure.  *Id*. at *7.

Plaintiff's counsel failed to inform this Court of the Opinion and Order.  At a pre-trial conference scheduled for December 12, 2023 (approximately nine months after entry of the Opinion and Order), Plaintiff's Counsel represented to this Court that the Plaintiffs were obtaining default judgments against Kal imminently.  Based on that representation, this Court scheduled a trial on both Plaintiffs' claims against Kal.  After completion of post-trial briefing, the Court

learned Bermejo's claims against Kal had been dismissed with prejudice.  Plaintiffs' counsel

offered no explanation for its failure to apprise the Court of the Opinion and Order.

## DISCUSSION

### A.    Bermejo's Claims

*Brown v. Brown (In re Brown)*, Adv. No. 18-01553, 2018 WL 4637465 (Bankr. S.D.N.Y.

September 25, 2018) provides the following concise analysis of the mootness doctrine:

> A case is moot "when the issues presented are no longer live or the parties lack a
> legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486,
> 496 (1969) (internal quotations omitted). Application of that doctrine "ensures that
> the litigant's interest in the outcome [of a case] continues to exist throughout the
> life of the lawsuit[.]" *Cook v. Colgate Univ.*, 992 F.2d 17, 19 (2d Cir. 1993)
> (citations omitted). That means that there must be an actual controversy between
> the parties at all stages of the case, not merely at the time the complaint is filed. *See
> Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). "If an intervening circumstance
> deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point
> during litigation, the action can no longer proceed and must be dismissed as moot."
> *Genesis Healthcare Corp. v. Symczyk,* 596 U.S. 66, 72 (2013) (internal quotation
> marks omitted); *see also Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)
> (noting that the "case-or-controversy requirement subsists through all stages of
> federal judicial proceedings, trial and appellate."). "When a case becomes moot,
> the federal courts lack subject matter jurisdiction over the action." *Fox v. Bd. of
> Trustees of the State Univ. of New York*, 42 F.3d 135, 140 (2d Cir. 1994) (internal
> quotation marks omitted).

*Brown* at *3.  The Opinion and Order in the Bermejo Federal Action dismissed Bermejo's claims

against Kal with prejudice.  The Opinion and Order is a final order as the time to appeal has

expired.  Therefore, Bermejo has no enforceable claims against Kal or a personal stake in the

outcome of this adversary proceeding, and this Court is required to dismiss her claims as moot.

*Cf. Cardwell v. Finnimore (In re Finnimore)*, Adv. No. 10-3036, 2012 WL 1392992, *4 (Bankr.

D. Conn. April 20, 2012) (Although creditor with disputed claim has standing to object to

discharge, "[w]here the validity of the alleged claim does not present a fair basis for litigation, the

purported creditor does not have standing to prosecute a Section 727(a) objection.").

B.    **Sagbaciela's Claims**

    i.  Burden of Proof

Sagbaciela bears the burden of proof on her objections to Kal's discharge and the dischargeability of her claim.  *See* FED. R. BANKR. P. 4005; *Yash Raj Films (USA), Inc. v. Akhtar (In re Akhtar)*, 368 B.R. 120, 127 (Bankr. E.D.N.Y. 2007); *First Am. Bank of New York v. Bodenstein (In re Bodenstein)*, 168 B.R. 23, 28 (Bankr. E.D.N.Y. 1994).  Objections to discharge and dischargeability of a claim must be established by a preponderance of the evidence.  *Grogan v. Garner*, 498 U.S. 279, 287–88 (1991); *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006); *Miner v. Mines (In re Mines)*, 630 B.R. 107, 112 (Bankr. E.D.N.Y. 2021); *Pergament v. Gonzalez (In re Gonzalez)*, 553 B.R. 467, 473 (Bankr. E.D.N.Y. 2016); *Akhtar*, 368 B.R. at 127; *Bodenstein*, 168 B.R. at 28.

"Once sufficient evidence is presented by the plaintiff to satisfy the burden of going forward with the evidence, the burden shifts to the debtor to provide evidence to rebut the plaintiff's prima facie case."  *Dubrowsky v. Estate of Arnold Perlbinder (In re Dubrowsky)*, 244 B.R. 560, 572 (E.D.N.Y. 2000); *see Bodenstein*, 168 B.R. at 28.

    ii.  11 U.S.C. § 727(a)(4)(A) Legal Standards

Bankruptcy Code section 727(a)(4)(A) provides that a debtor is denied discharge when "the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account[.]" 11 U.S.C. § 727(a)(4)(A).  Denying discharge pursuant to Bankruptcy Code section 727 is "a severe sanction and must be construed strictly in favor of the debtor."  *Moreo v. Rossi (In re Moreo)*, 437 B.R. 40, 59 (E.D.N.Y. 2010).

To prevail on a claim under Bankruptcy Code section 727(a)(4)(A), a plaintiff must prove by a preponderance of evidence that "(1) the debtor made a statement under oath; (2) the statement

was false; (3) the statement related materially to the bankruptcy case; (4) the debtor knew the statement was false; and (5) the debtor made the statement with fraudulent intent." *Agai v. Antoniou (In re Antoniou)*, 515 B.R. 9, 22 (Bankr. E.D.N.Y. 2014) (citation omitted).

Once the proponent establishes its initial burden of producing evidence of a false statement, the burden shifts to the debtor to provide a "credible explanation." *Moreo*, 437 B.R. at 59; *see also Antoniou*, 515 B.R. at 23 ("[W]hen a plaintiff produces persuasive evidence of a false statement, the burden shifts to the debtor to come forward with evidence to prove that it was not an intentional misrepresentation or provide some other credible explanation."). Notwithstanding, the overall burden of proof remains with the moving party. *Moreo*, 437 B.R. at 59.

"Omissions as well as affirmative misstatements qualify as false statements for Section 727(a)(4)(A) purposes." *Adler v. Ng (In re Adler)*, 395 B.R. 827, 841 (E.D.N.Y. 2008). Even "one single false oath or account is sufficient to deny a debtor's discharge." *TD Bank, N.A. v. Nazzaro (In re Nazzaro)*, Adv. No. 10-8500, 2013 WL 145627 at *7 (Bankr. E.D.N.Y. Jan. 14, 2013). Bankruptcy schedules and statements of financial affairs require verification by the debtor under penalty of perjury, which—by statute—has the force and effect of an oath for purposes of Bankruptcy Code section 727(a)(4)(A). *O'Connell v. DeMartino (In re DeMartino)*, 448 B.R. 122, 127–28 (Bankr. E.D.N.Y. 2011) (citing FED. R. BANKR. P. 1008; 28 U.S.C. § 1746; *Dickinson v. Wainwright*, 626 F.2d 1184, 1186 (5th Cir. 1980)).

A statement materially relates to the bankruptcy case when it contains relevant information "that creditors and the trustee reasonably would have regarded as significant in identifying the assets of the estate that could be liquidated and used to satisfy claims[.]" *Mazer-Marino v. Levi (In re Levi)*, 581 B.R. 733, 754 (Bankr. S.D.N.Y. 2017). In that sense, the false statement or omission must bear a relationship "to the debtor's business transactions, or if it concerns the

discovery of assets, business dealings, or the existence or disposition of the debtor's property." *Cap. One Equip. Fin. Corp. v. Singh (In re Singh)*, 585 B.R. 330, 340 (Bankr. E.D.N.Y. 2018) (quoting *Gordon v. Tese-Milner (In re Gordon)*, 535 B.R. 531, 538 (S.D.N.Y. 2015)*. "[E]ven worthless assets and unprofitable business transactions must be disclosed." *Ethelberth v. Omogun (In re Omogun)*, Adv. No. 17-08023, 2022 WL 2517160 at *10 (Bankr. E.D.N.Y. July 6, 2022) (citation omitted). "[M]ateriality does not require a showing that creditors were prejudiced by the false statement." *Id.*

The "knowledge" requirement of Bankruptcy Code section 727(a)(4)(A) is satisfied by showing that "the bankrupt knows what is true and, so knowing, willfully and intentionally swears to what is false." *Moreo*, 437 B.R. at 62.

Fraudulent intent can be established by a showing of actual fraud through evidence of the traditional badges of fraud, or by the debtor's reckless disregard for the truth of his statements. *Singh*, 585 B.R. at 338–39. Reckless disregard for the truth is analyzed by considering the following factors: "(a) the serious nature of the information sought and the necessary attention to detail and accuracy in answering; (b) a debtor's lack of financial sophistication as evidenced by his or her professional background; and (c) whether a debtor repeatedly blamed recurrent errors on carelessness or failed to take advantage of an opportunity to clarify or correct inconsistencies." *Id.* at 339 (internal quotations omitted). A failure to amend schedules can give rise to an inference of fraud, as well as series of incorrect statements and omissions of fact. *Id.*

### iii. Application of Standards

Sagbaciela alleges that Kal failed to disclose on her bankruptcy Schedules that she was the plaintiff in a personal injury action captioned *Kal v. Keane*. Case No. 701136/2021 (N.Y. Sup. Ct. Jan. 18, 2021); Pl. B. 18, Adv. ECF No. 19. Sagbaciela is incorrect. Although the personal

injury action is not listed in Kal's SOFA, it is disclosed in Kal's Schedule A/B: Property in response to question 33. Schedules 14, ECF No. 1.[2] The disclosure of the personal injury action in her Schedules is evidence that Kal had no intent to hide that asset.

Sagbaciela alleges Kal made false statements in her Schedules respecting the value of her car and her co-op. Pl. B. 18, Adv. ECF No. 19. In her bankruptcy Schedules, Kal valued her co-op at $290,000 and her car at $6,500. Schedules 10-11, ECF No. 1. Sagbaciela reports that Kal valued her assets differently in depositions. Pl. B. 18, Adv. ECF No. 19. For example, at a 2023 deposition, Kal valued her co-op to be worth $240,000 or $250,000. *Id*. Also, in a deposition, Kal testified her car had been worth $14,000 to $16,000. *Id*. Sagbaciela introduced no evidence concerning the actual value of Kal's co-op or car as of the petition date. Therefore, Plaintiff has only proven that Kal's opinions respecting the value of her assets changed. The Court notes that the chapter 7 trustee did not attempt to sell the estate's interests in the co-op or the car, which is an indication that due to liens on those assets and Kal's exemptions, the assets' values were insignificant. As such, Sagbaciela failed to show that Kal made a false statement in her Schedules respecting the value of the co-op or the car and has failed to show the materiality of any misstatement.

Sagbaciela alleges that Kal included three people on her schedule of creditors that Kal did not consider creditors. *Id*. at 14. In fact, Kal's schedule of unsecured creditors includes creditors named Vicky, Jessica, and Rosa Maria Montero. Schedules 19-20, ECF No. 1. Kal testified that she did not personally list those creditors, but her bankruptcy lawyer likely listed them as creditors. Tr. 2 45:2-16. Each of the three creditors is listed as having a disputed claim in the amount of $0.00 for "wages, salaries, and commissions, [u]npaid wages, overtime, and etc." Schedules 19-

---

[2] The chapter 7 Trustee obtained bankruptcy court approval of a settlement of the personal injury action that will fund a distribution to creditors. *See* Order Approving Settlement, ECF No. 46.

20, ECF No. 1.  Sagbaciela has failed to prove that the inclusion of those three creditors in the Schedules is false.  The Schedules represent that any claim by those three creditors is disputed and is $0.  Those entries are consistent with Kal's testimony that she did not believe those three people were creditors.  Including those potential creditors in her Schedules was prudent as it provided notice to the creditors to file proofs of claim and the opportunity to object to the dischargeability of their claims and the debtor's discharge.  No fraudulent intent could be inferred from the inclusion of those creditors on the Kal's Schedules.

Sagbaciela alleges the Schedules are false because Kal failed to include Bermejo as a creditor.  Pl. B. 19, Adv.  ECF No. 19.  However, Kal listed Plaintiff's attorneys in her Schedules and referenced Ms. Bermejo.  Schedules 21, ECF No. 1.  Ms. Bermejo received notice of Kal's bankruptcy case in time to file timely a proof of claim and this adversary proceeding.  The Court will not infer fraudulent intent from the way Kal referenced Bermejo in her Schedules.

Sagbaciela appears to be correct that Kal's statements respecting her pre-Petition Date income in her Schedules and SOFA are incorrect.  Pl. B. 17, Adv.  ECF No. 19.  Specifically:

- Kal reported $30,000.00 in wage income for the year 2019 but her 2019 tax return reported $38,400.00 in wage income.

- Kal reported $20,000.00 in wage income for the year 2020 but her 2020 tax return reported $14,800.00 in wage income.

- Kal reported $18,000.00 in unemployment insurance income in the year 2021.  However, between December 28, 2020, and August 1, 2021, Kal received $20,739.00 gross, and $18,732.12 net unemployment insurance income.

- Kal neglected to report $19,056.00 in unemployment insurance received from March 16, 2020 through December 27, 2020.

Pl. B. 17-18, Adv. ECF No. 19.

Sagbaciela, however, has failed to establish by a preponderance of the evidence that Kal made the misstatements respecting pre-Petition Date income with any intent to deceive.  Kal did

not read her bankruptcy petition because she is not proficient in English. The petition was not translated for her; rather it was summarized to her by her lawyer in a general way before she signed it. Tr. 2 23:15–25:3, 29:9–15. Further, Sagbaciela also failed to show the inaccurate statements related materially to the bankruptcy case. The misstatements of income did not and would not alter the administration of this chapter 7 case. The chapter 7 trustee could not have administered the income from wages or unemployment compensation, and the discrepancies in income reported in the tax returns versus the income reported on the Schedules do not alter the overall picture of Kal's financial condition. In a different context, the Court could find that incorrect statements regarding prepetition income are material. Accordingly, the Court's finding that the incorrect statements in Kal's schedules are not materially related to the bankruptcy case is limited to this case, and the Court might not reach the same conclusion in another case.

Based on the foregoing, the Court finds that Sagbaciela has failed to carry the burden of proof on her objection to Kal's discharge.

### iv.   11 U.S.C. § 523(a)(2)(A) Legal Standards

"A discharge . . . does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by. . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]". 11 U.S.C. § 523(a)(2)(A).

False pretenses are "implied misrepresentations intended to create and foster a false impression." *Ardizzone v. Scialdone (In re Scialdone)*, 533 B.R. 53, 59 (Bankr. S.D.N.Y. 2015) (quoting *DRCK LLC v. Chong (In re Chong)*, 523 B.R. 236, 243 (Bankr. D. Colo. 2014)). To establish false pretenses, a plaintiff must show "(1) an implied misrepresentation or conduct by the defendants; (2) promoted knowingly and willingly by the defendants; (3) creating a contrived and

misleading understanding of the transaction on the part of the plaintiffs; (4) which wrongfully induced the plaintiffs to advance money, property, or credit to the defendant." *Wang v. Guo (In re Guo)*, 548 B.R. 396, 401 (Bankr. E.D.N.Y. 2016) (citation omitted). False pretenses can consist of either "conscious deceptive or misleading conduct calculated to obtain, or deprive, another of property, . . . or an implied misrepresentation or conduct intended to create a false impression." *Xin v. Zhu (In re Zhu)*, Adv. No. 19-01358, 2022 WL 3364579, at *18 (Bankr. S.D.N.Y. Aug. 12, 2022) (citations omitted).

To establish a false representation, a plaintiff must show "(1) defendant made a false or misleading statement; (2) with intent to deceive; (3) in order for the plaintiff to turn over money or property to the defendant." *Guo*, 548 B.R. at 401. "False representations" refer to express statements, either oral or written, which are false, misleading, and designed to deceive. *Zhu*, 2022 WL 3364579, at *17. A plaintiff must also establish that reliance on the defendant's purported false representation was justifiable. *Id.*

In *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355 (2016), the Supreme Court of the United States interpreted "actual fraud" for purposes of Bankruptcy Code section 523(a)(2)(A) as encompassing "forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." *Id.* at 359. The Supreme Court defined fraud as "anything that counts as 'fraud' and is done with wrongful intent." *Id.* at 360; *see e.g., DZ Bank AG Deutsche Zentral-Genossenschaft Bank v. Meyer (In re Meyer)*, 869 F.3d 839, 841 (9th Cir. 2017) (finding that debtor engaged in actual fraud by causing wholly-owned company to transfer a creditor's collateral to another entity the debtor controlled); *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000) (broadly defining the term "actual fraud" to encompass "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat

another."); *Suparo Int'l Inc. v. Kedia (In re Kedia)*, 607 B.R. 101, 114 (Bankr. E.D.N.Y. 2019) (finding actual fraud where debtor caused companies he controlled to transfer funds to debtor's family, friends and companies "to deprive creditor of any ability to collect the debt owed it").

v. <u>Application of Standards</u>

Plaintiff's post-trial brief makes no mention of Bankruptcy Code section 523(a)(4). Plaintiff has not identified a false or misleading statement, misrepresentation, implied misrepresentation or intentionally fraudulent scheme. Although Kal violated the FLSA and New York State labor law; nothing suggests that Kal told Sagbaciela that she was being paid in accordance with applicable law. Therefore, Sagbaciela has failed to satisfy the burden of proof on the Third Cause of Action that her claim is nondischargeable under Bankruptcy Code section 523(a)(4).

vi. <u>11 U.S.C. § 523(a)(6) Legal Standards</u>

"A discharge . . . does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity[.]" 11 U.S.C. § 523(a)(6). To prevail on a claim under Bankruptcy Code section 523(a)(6), a plaintiff must prove by a preponderance of evidence that the (1) debtor acted willfully, (2) the debtor acted maliciously, and (3) the debtor's willful and malicious actions caused injury to the plaintiff or the plaintiff's property. *Wu v. Lin (In re Qiao Lin)*, 576 B.R. 32, 41 (Bankr. E.D.N.Y. 2017); *Guggenheim Cap., LLC v. Birnbaum (In re Birnbaum)*, 513 B.R. 788, 802–03 (Bankr. E.D.N.Y. 2014).

The Bankruptcy Code does not define the term "willful." The Supreme Court has defined "willful" to mean "deliberate or intentional." *Birnbaum*, 513 B.R. at 803 (citing *Kawaauhau v. Geiger*, 523 U.S. 57, 61 n.3 (1998)). A showing of willfulness for purposes of Bankruptcy Code

section 523(a)(6) requires a showing that "the actor intend[ed] 'the consequences of an act,' not simply 'the act itself.'" *Birnbaum*, 513 B.R. at 803; *see also Qiao Lin*, 576 B.R. at 54 (willfulness under section 523(a)(6) requires proof of "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury") (emphasis in original); *Curtis v. Ferrandina (In re Ferrandina)*, 533 B.R. 11, 26 (Bankr. E.D.N.Y. 2015) ("Courts within the Second Circuit have found that if a debtor believes that an injury is substantially certain to result from his conduct, the debtor will be found to have possessed the requisite intent to injure[.]") (collecting cases). Reckless or negligent conduct is not sufficient to satisfy section 523(a)(6)'s "willful" requirement. *Ferrandina*, 533 B.R. at 26.

The Bankruptcy Code does not define "malicious." The Second Circuit Court of Appeals has defined "malicious" to mean "wrongful and without just cause, even in the absence of personal hatred, spite, or ill-will." *Navistar Fin. Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 87 (2d Cir. 1996). "Malice may be constructive or implied." *Id*. at 88 (citations omitted). "Actual malice is present where there is 'a wrongful act done consciously and knowingly in the absence of just cause or excuse.'" *Moreno Cocoletzi v. Orly*, Adv. No. 16-01020, 2016 WL 4376947 at *6 (Bankr. S.D.N.Y. Aug. 10, 2016) (quoting *Nesler v. Thomason (In re Thomason)*, 288 B.R. 812, 815 (Bankr. S.D. Ill. 2002)). Malice may be implied by the acts and conduct of the accused or "when anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another." *Ferrandina*, 533 B.R. at 26 (citations omitted). When determining whether there is malice, bankruptcy courts look to the totality of the circumstances. *Rescuecom Corp. v. Khafaga (In re Khafaga)*, 419 B.R. 539, 550 (Bankr. E.D.N.Y. 2009).

vii.  <u>Application of Standards</u>

The Court finds that Kal acted willfully because Kal intended to pay Sagbaciela less than what was required to pay under applicable law.  Kal testified that she intended to pay Sagbaciela a daily rate, without overtime or a spread of hours differential.  Tr. 2 19:16-25; Tr. 1 104:19-105:1.  Kal knew of the minimum wage because she received notices from her accountant that were in Korean as well as English and Spanish that stated the minimum wage and overtime rates, and she reviewed and posted those notices at Ruby Nail.  Tr. 2 10:19 – 12:12.  Kal testified she would have paid her employees an hourly rate but the employees preferred the daily rate instead.  Tr. 2 19:16-25; Tr. 1 104:21-105:1.  However, Kal's records indicate she offered to pay her employees an hourly rate of $11.00, which was less than the $13.00 minimum wage.  *See* Tr. 1 13:11–16, 20:12–16.  There is no evidence that Sagbaciela would have turned down an hourly wage that compensated her in accordance with applicable law.

The Court finds that Kal acted with malice because, taken as a whole, the evidence establishes that her acts are contrary to commonly accepted duties of an employer and injurious to employees.  *Cf. Petralia v. Jercich (In re Jercich),* 238 F.3d 1202, 1207 (9th Cir. 2001) (finding prompt payment of wages due is a fundamental public policy and bad faith failure to pay wages is tortious).  Here, Kal underpaid Sagbaciela for years.  Kal generated false records respecting Sagbaciela's hours worked and rate of pay and required Sagbaciela to sign those records.  Kal does not contend she lacked the money to pay her employees.  Instead, she claims she paid what she believed was fair.  Paying what one subjectively believes is "fair" is contrary to the requirement of paying employees what they are owed by law.

## **CONCLUSION**

Judgment is granted in favor of Sagbaciela on her Second Cause of Action.  Her $141,051.70 claim, which is the amount of damages in the Corrected Judgment is nondischargeable.  Judgment is denied on Sagbaciela's First and Third Causes of Action.  The Court will grant Kal a discharge, provided she has satisfied the prerequisites for receipt of a discharge.  Sagbaciela's request for attorneys' fees is denied because she has not provided a statutory basis for an award of fees in excess of the fees awarded in the Corrected Judgment.

Bermejo's causes of action against Kal are dismissed as moot.

Plaintiffs' counsel is directed to submit a proposed order and judgment in conformity with this memorandum within fourteen days of entry.

Dated: October 31, 2024
      Brooklyn, New York



Jil Mazer-Marino
United States Bankruptcy Judge